**Lavenberg License**

*Charles M. Marshall,* for appellant.

*R. Barry McAndrews,* for Commonwealth.

BODLEY, J., June 24, 1970.—This is an appeal from the suspension of appellant's operating privileges by the Secretary of Revenue for a period of four months from March 13, 1970. A supersedeas was granted staying the suspension and a hearing de novo was held on May 15, 1970.

The facts are undisputed. On January 16, 1968, at approximately 2:45 a.m., appellant, then aged 16 and the holder of a junior operator's license, was stopped for a traffic violation while proceeding south on U. S. Route 611 in this county. He was charged with having violated section 1002(b)(6) (speeding), and simultaneously with having violated section 604.1(c) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §604.1(c), being the curfew imposed upon holders of a junior operator's license.* Appellant pleaded guilty to each offense. As a result of appellant's conviction for the section 604.1(c) violation, a departmental hearing was held by the Bureau of Traffic Safety on December 29, 1969. Thereafter, on March 3, 1970, appellant was notified of the suspension of his operating privileges. The suspension was based

---

* "(c) No person possessing a junior operator's license shall operate any vehicle or tractor upon any public highway between the hours of midnight and five o'clock a.m. unless he is accompanied by a parent or a person in loco parentis."

solely upon the curfew violation, there having been no reference made to the speeding violation in either the notice of departmental hearing or the notice of withdrawal of operating privileges.

By way of defense, appellant testified that on the date of the offense he had been employed as a cook in a diner near the point of his arrest. He went on to say that while working he suffered a cut upon his leg when he came into contact with a nail in the supply room. Because he was bleeding, according to appellant, he telephoned his employer who urged him to go to the local hospital some five miles from his place of employment in order to get treatment. Under these circumstances, although aware of the curfew provisions of The Vehicle Code, he nonetheless drove to the hospital where he was treated. It was upon his return to his place of employment that he was stopped by the officer for the speeding violation which led to the additional curfew violation charge, the basis of this suspension.

Without objection, defendant offered into evidence a letter purportedly signed by Chester W. Rutherford, owner of the diner, confirming appellant's testimony concerning the injury and stating that he, the owner, "directed" appellant to go to the hospital for treatment.

Also received without objection was a copy of the Doylestown Hospital Emergency Ward report dated January 16, 1968, indicating that at 2:15 a.m. on that date appellant had been treated at the hospital for the injury. The report, by way of history, confirmed that appellant had cut his leg upon a nail while working at the diner and while noting that the two-inch long laceration was superficial, nevertheless indicated that the wound had been cleansed and appellant given an injection of tetanus toxoid.

While section 604.1(a) places in the Secretary of

Revenue discretionary power to suspend the operating privileges of a junior operator for a violation of subsection c, the curfew provision, nonetheless upon appeal and after de novo hearing, as in the case of other discretionary suspensions, this court has the power and duty to determine independently the merit of the suspension: Commonwealth v. Wagner, 364 Pa. 566 (1950). In reviewing the action of the secretary, the Common Pleas Court has a broad discretionary power and is charged with the duty of administering justice according to the evidence and the circumstances presented. Extenuating facts and circumstances should be considered. Emergency, inadvertence, as well as other circumstances, such as economic hardship, if supported by the testimony, may move the court to reverse the order of suspension in the interest of justice. See Commonwealth v. Emerick, 373 Pa. 388, 397 (1953).

Although Lavenberg's offense occurred after the effective date, July 24, 1966, of the amendment to The Vehicle Code which established the so-called point system, nevertheless the Secretary of Revenue retains his discretionary power of suspension under section 604.1. The point system, section 619.1, added to The Vehicle Code on January 24, 1966, is compatible with and had no effect upon the powers granted the secretary under section 604.1: Angelicchio Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 409, 410 (1968); Toth License, 47 D. & C. 2d. 299, 302 (1969). Accordingly, the suspension here was not mandated by The Vehicle Code, following the accumulation of points, but rather, imposed by the Secretary in the exercise of his discretion.

While his actions should not lightly be set aside, we are bound to conclude under the circumstances of this case that it would be an abuse of discretion to permit this suspension to stand. See, e.g., Onorato

Automobile License Case, 17 Bucks 288, 290 (1967). Although the hospital report suggests that Lavenberg's wound was superficial, it is difficult for us to condemn the actions of a 16-year-old boy, who, having sustained the injury, simply follows the instructions of his employer by transporting himself to the emergency ward at an hour when other transportation was not available to him. We believe that the "emergency" which led to the violation and subsequent suspension was sufficiently real in the minds of appellant and his employer to justify the boy's operation of the vehicle under the circumstances. And we do not feel that the interest of justice would be served in any way at this time by permitting the suspension to stand.

We cannot help but note, also, that appellant, although only 19 at this time, is married and is employed as a truck driver. The loss of his operating privilege, of course, would also mean the loss of his present employment.

One other bit of unusual testimony deserves mention. It appears that Lavenberg has experienced difficulties, certainly more severe than the problem we are here considering. He testified that he was arrested on February 15, 1969, and was incarcerated in the Bucks County Prison for offenses which need not be mentioned here. And he indicated that he gained some insight respecting his problems before his release on August 4, 1969. The deputy warden for treatment of the Bucks County Prison saw fit to testify on Lavenberg's behalf. He noted that from an initial attitude of resistance, defendant made a difficult adjustment at the prison, and gradually achieved, through counseling and courses of education offered him there, so that he secured his G.E.D. before release. In addition, the witness testified that appellant benefited from psychotherapy offered him at the prison and has shown continued improvement since his release in August of

last year. The witness felt that Lavenberg was a victim of the "failure syndrome" and could do well when this was overcome by a sense of achievement. The deputy warden believes that appellant is on his way to becoming a useful, law-abiding citizen, and while expressing no opinion on the subject, we do express the hope that the warden's confidence in the progress and development of his former charge is justified. At least our action here, while not controlled by these extraneous matters, will nonetheless put no barrier in the path of appellant.

## ORDER

And now, to wit, June 24, 1970, the appeal from the suspension of the operating privileges of Craig Alfred Lavenberg is hereby sustained, and the order of the Secretary of Revenue suspending his operating privileges is vacated, overruled and reversed.